O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MARGIN TRIGO, §<br>    Plaintiff, §<br>§<br>        v. §<br>§<br>§<br>TEXAS DEPARTMENT OF PUBLIC §<br>SAFETY §<br>§<br>    Defendant. § | | Civil Action No. L-06-cv-181 |

## MEMORANDUM OPINION

Pending is Defendant Texas Department of Public Safety's Motion for Summary Judgment (Docket No. 43).

Plaintiff Margie Trigo was employed by Defendant Texas Department of Public Safety (DPS) as a Trooper I in the Highway Patrol Division in Cotulla, Texas. (Docket No. 43, at 2.) On December 2, 2004, during a lunch break at a DPS meeting, Corporal Miguel Rodriguez made allegedly inappropriate and derogatory remarks about Trigo's sex life to other DPS employees, including Trigo's supervisor Sergeant LaLonde. Id. at 3. Trigo was not present when Corporal Rodriguez made the remarks, but later found out about them and reported the matter to Captain Juan Rodriguez. Id. The Chief of the Highway Patrol Division, Randall Elliston,

1

authorized an investigation into the matter, and Corporal Rodriguez and Sergeant LaLonde were disciplined in February of 2005. (Docket No. 44, Attach. 6.)  By then, however, Trigo was no longer employed with DPS.  Trigo submitted a letter of resignation on December 17, 2004, effective that same day.  Id. at 42-43.  In her exit interview form, she checked the box for "Dissatisfaction with Supervisor or co-workers" as the reason for resigning.  Id. at 43.  On the same form, Sergeant LeLonde marked that Trigo was recommended for rehire.  Id.

In January 2006, Trigo applied for reinstatement with DPS. Colonel Thomas A. Davis, Jr. rejected the application. Trigo filed a claim with the EEOC, alleging that DPS did not rehire her in retaliation because she "opposed discrimination (sexual harassment)."  (Docket No. 43, Ex. A.)  She was issued a Right to Sue Letter on October 25, 2006. (Docket No. 44, Attach. 10-C.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322 (1986); Little v.

2

Liquid Air Corp., 317 F.3d 1069, 1075 (5th Cir. 1994).  A disputed fact is material if its resolution could impact the outcome of the action.  Anderson v. Liberty Lobby Co., 477 U.S. 242, 248 (1986).  Doubts and all reasonable inferences must be resolved in favor of the nonmoving party.  Fierros v. Tex. Dept. of Health, 274 F.3d 187, 190 (5th Cir. 2001).

**ANALYSIS**

Plaintiff's amended complaint makes three claims for relief: 1) failure to rehire because of sex discrimination, 2) failure to rehire in retaliation for having opposed practices made unlawful under Title VII of the Civil Rights Act of 1964, and 3) violations of Chapter 21 of the Texas Labor Code.  (Docket No. 39.) In her Response to Defendant's Motion for Summary Judgment, Trigo states that she does not wish to pursue her discrimination claim or her claim under the Texas Labor Code.  (Docket No. 44, at 11.) Trigo also states she "elects hereby to proceed only on her claim for sexual harassment." Id.  This statement raises two issues.  First, as Defendant correctly points out, Trigo does not make a claim of sexual harassment in her amended complaint nor did she make it in her EEOC complaint.  As such, sexual harassment is not properly before this court.  Second, the quoted statement implies Trigo does not wish to pursue her retaliation

claim either.  However, Trigo continues at some length defending her retaliation claim, so the Court will assume that she wishes to pursue that claim, which becomes the only claim still pending.

<u>Plaintiff's Retaliation Claim</u>

Title VII makes it unlawful for an employer to discriminate against an employee because the employee has opposed any practice made unlawful "under this subchapter."  42 U.S.C. § 2000e-3(a).  To succeed in a retaliation claim, a plaintiff must first establish a prima facie case of retaliation.  <u>Rios v. Rossotti</u>, 252 F.3d 375, 380 (5th Cir. 2001).  Once established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision.  <u>Id.</u>  Finally, the plaintiff must then produce "sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation."  <u>Id.</u> (quoting <u>Sherrod v. Am. Airlines, Inc.</u>, 132 F.3d 1112 (5th Cir. 1998).

To establish a prima facie case of retaliation, a plaintiff must show that 1) the plaintiff engaged in activity protected by Title VII, 2) that an adverse employment action occurred, and 3) that a causal link existed between the protected activity and the adverse employment action.  <u>Ackel v. Nat'l Commc'ns, Inc.</u>, 339 F.3d 376, 385 (5th Cir. 2003).  It is undisputed that Trigo was

4

not reinstated. The exact nature of Trigo's "protected activity" is unclear. An attachment containing internal DPS email indicates that at the time of her resignation, Trigo made an allegation of "unprofessional conduct." (Docket No. 44, Attach. 4.) Specifically, she reportedly said that Corporal Rodriiguez had commented on her sexual life, using profane language in the process, and that Sergeant Lalonde laughed rather than take "appropriate steps." Nevertheless, both parties appear to concede the language constituted protected activity, presumably as a complaint of sexual discrimination or sexual harassment. Therefore, the court will address the causal link necessary to establish a prima facie case.

At the prima facie stage, "the standard for satisfying the causation element is 'much less stringent' than a 'but for' causation standard." Ackle, 339 F.3d at 385 (quoting Fierros, 274 F.3d at 191). Nevertheless, the plaintiff must produce "*some* evidence" of causation. Id. In determining a causal link between the protected activity and the adverse employment action, the focus is on the final decisionmaker. Id. DPS argues that because Colonel Davis, the final decisionmaker in this case, was unaware of Trigo's prior Title VII activity, there can be no causal link between his failure to hire her and the protected activity. However, in Davis's deposition, he agreed with the

5

proposition that he "relied completely on the position of Chief Elliston." (Docket No. 44, Attach. 11 at 36.) Elliston's knowledge of Trigo's prior activity is evidenced by his approval of an inquiry into her claims of inappropriate conduct. Because Elliston had knowledge of Trigo's activity and guided Davis's decision, Davis's lack of personal knowledge about the resignation in December of 2004 is not controlling. Trigo has met her initial burden of providing "some evidence" of causation and established a prima facie case.

DPS also argues that because there was a thirteen-month time lapse between Trigo's protected activity and the adverse employment action, Trigo cannot satisfy the causal connection, citing <u>Grizzle v. Travelers Health Network, Inc.</u>, 14 F.3d 261, 268 (5th Cir. 1994). However, DPS's suggestion that the time lapse, by itself, conclusively destroys a causal link between the protected activity and the failure to rehire is contradicted by <u>Grizzle</u> itself. 14 F.3d at 268 ("Although this [ten-month] lapse of time is, by itself, insufficient to prove there was no retaliation . . . ").

DPS meets its burden of providing a legitimate, nondiscriminatory reason for the adverse employment action by consistently asserting that Trigo resigned without giving proper notice. Davis says that he made the decision not to reinstate

6

Trigo because of the manner of her resignation and the recommendation of Elliston.  Elliston states that the reason he did not recommend reinstating Trigo was because of Trigo's failure to give proper notice.

Trigo must now produce sufficient evidence that would permit a trier of fact to find that DPS's non-discriminatory reason is a pretext for unlawful retaliation.  For retaliation claims, this burden requires the plaintiff to demonstrate the adverse employment action would not have occurred "but for" the protected activity.  <u>Rios</u>, 252 F.3d at 380.  While disbelief of the employer's proffered reason for its action does not necessarily establish the fact of discrimination, it is a form of circumstantial evidence that is probative, and potentially quite persuasive, proof of discriminatory intent.  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 147-48 (2000); <u>see also</u> <u>Gee v. Principi</u>, 289 F.3d 342, 348 (5th Cir. 2002) (applying <u>Reeves</u> to a Title VII retaliation claim).  Trigo points out that there were various reasons given to justify denying her rehire.  DPS's first letter to Trigo, written by Davis, lists her resignation and the recommendation of her former "chain of command" as the reasons for denying her reinstatement.  (Docket No. 44, Attach. 9-A). Trigo requested more information, and in another letter dated February 13, 2006, Davis stated that DPS did

7

not reinstate Trigo because of her reason for resigning,[1] departmental work history and performance, and DPS's needs at the time of the reinstatement request (Docket No. 44, Attach. 9-C.) Elliston's affidavit submitted in support of Defendant's Motion for Summary Judgment only gives the manner of Trigo's resignation as the reason for not reinstating her.

A reasonable jury could see these shifting reasons as evidence of pretext.  Additionally, to the extent that the recommendation of her "chain of command" or departmental work history infer prior poor performance by Trigo, the record lacks any facts to support this inference.  DPS offers no evidence of tardiness, sloppiness, or any other indication of Trigo's competence or lack thereof. Also, DPS offers no facts to support the premise that DPS's needs at the time of the request for reinstatement justified Trigo's rejection.  The nature of these needs are not explained anywhere in the record.  None of the fifteen rejection letters given to other applicants seeking reinstatement during this general time period offer this rationale. (Docket No. 43, Ex. D.)  Further, a document titled January 2006 Vacancy List appears to indicate 106 highway patrol

---

[1] The court regards a "reason" for resigning as being different than the "manner" of resigning, but leaves this distinction for further development.

vacancies statewide at the time Trigo applied.  (Docket No. 44, Attach. 9-E.)

As to the manner of Trigo's resignation, DPS policy allows a person who resigns to seek reinstatement within two years of her resignation.  The policy is silent as to any consequence from a particular manner of resigning, and Elliston confirmed there is no policy regarding whether or not to rehire an applicant who had resigned on short notice (Docket No. 44, Attach. 12, at 43).  Elliston could not remember ever rejecting a request for reinstatement because of how the person resigned.  Id.  Further, Sergeant LaLonde checked the "Yes" box next to "Recommend for rehire" on Trigo's exit interview form.  (Docket No. 44, Attach 4-B).  This recommendation, dated three days after the alleged offensive resignation, at least suggests that the timeliness of the resignation was not as significant as DPS now claims.  Finally, if indeed Trigo was not rehired because of her "reason for resigning" (see supra note 1), that would consitute additional evidence that she was not rehired because of her protected activity.  Viewing the facts in a light most favorable to the Plaintiff, a reasonable jury could find that but for Trigo's prior complaints, she would have been reinstated.

**CONCLUSION**

For the reasons stated above, Defendant's Motion for Summary Judgment (Docket No. 43) is DENIED as to the retaliation claim, and GRANTED as to the sex discrimination and Texas Labor Code claim.

DONE at Laredo, TX, this 19th day of September 2008.

*George P. Kazen*
George P. Kazen
United States District Judge